# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| WERTHEIMER H., INC.; WERTHEIMER A., INC.; HENRY WERTHEIMER, III; JANE WERTHEIMER; PAUL WERTHEIMER; and JANET WERTHEIMER,<br><br>Plaintiffs,<br><br>vs.<br><br>RIDLEY USA, INC., a Minnesota Corporation, d/b/a WESTFEEDS; and JOHN DOES I-IV,<br><br>Defendants. | **CV-18-83-GF-BMM**<br><br>**ORDER ON MOTIONS IN LIMINE** |

## INTRODUCTION

Defendants Ridley USA, Inc., a Minnesota Corporation, d/b/a Westfeeds ("Westfeeds") has filed a motion in limine on six separate issues. (Doc. 33.) Westfeeds seeks to exclude the following matters at trial:

> 1. Testimony, evidence, or argument that the Rumensin 90 bag was unlabeled;
>
> 2. Testimony by Plaintiffs' proposed expert Jerry Schlesser;
>
> 3. Testimony by Plaintiffs' proposed expert Lance Hughes that Rumensin 90 should only be used under the direction of a nutritionist and that the cause of death for all calves that dies between January 7, 2018 and February 7, 2018, was Rumensin toxicity;
>
> 4. Any testimony or argument that Westfeeds has a duty to issue a verbal warning;
>
> 5. Evidence, testimony, or reference to Plaintiffs' alleged emotional distress; and
>
> 6. Any argument or evidence that suggests the jury should view the case from the perspective of a party, or utilizes other golden rule or reptile theory arguments.

(Doc. 34 at 2.) Plaintiffs Wertheimer H. Inc., Wertheimer A., Inc., Henry Wertheimer, III, Jane Wertheimer, Paul Wertheimer, and Janet Wertheimer (collectively the "Wertheimers") oppose the motions. (Doc. 42.)

## DISCUSSION

A court should grant a motion in limine to exclude evidence only if the evidence would be "inadmissible on all potential grounds." *McDonald v. Townsquare Media, LLC*, 2014 WL 12600456, at *1 (D. Mont. 2014).

**A. Unlabeled Rumensin 90 Bags.**

Westfeeds contends that the Wertheimers' failure to preserve the allegedly unlabled Rumensin 90 bag should preclude any testimony, evidence, or argument regarding whether the bag contained a label. The Wertheimers counter that they burned the bag immediately after dumping out its contents in the ordinary course of their business. The Wertheimers argue that no problems had developed with their cattle at the time that they burned the bag in the ordinary course of their business and thus they had no legal duty to preserve it. (Doc. 42 at 3.)

The Wertheimers concede that Bob, Paul, and Janet Wertheimer admitted in their depositions either that they did not see the bag or did not pay attention to it. *Id.* at 4. Westfeeds can use these concessions to attempt to impeach the testimony of any of these potential witnesses in the event that they testify differently at trial. Wertheimers further assert that only Dr. Lance Hughes would testify affirmatively about the absence of a label. *Id.* Hughes testified in his deposition that he saw the plain brown bag in the burn barrel at the Wertheimers' ranch after Janet

3

Wertheimer told him that the bag lacked any writing. It remains for the jury to decide what weight to attach to the testimony of the Wertheimers and Hughes regarding the question of whether Westfeeds attached a label to the bag. No reason exists for the Court to stop them in their efforts to prove it. The Court denies this motion.

**B. Opinions of Jerry Schlesser.**

Westfeeds seeks to exclude testimony from Jerry Schlesser, the owner of a feed store, from suggesting that the label affixed to Rumensin 90 can be complicated and difficult to understand. (Doc. 34 at 5.) Westfeeds further seeks to exclude Schlesser from testifying that the supplier of Rumensin 90 must provide a verbal warning to any purchaser. *Id.* Wertheimers accuse Westfeeds of "[c]herry-picking selective portions of Schlesser's CV" in attempt to discredit him. (Doc. 42 at 6.)

The district court in *Star Ins. Co. v. Iron Horse Tools, Inc.*, 2018 WL 3079493 (D. Mont. 2018), recently addressed a similar issue. There an insurer sought to introduce testimony from experts regarding the cause and origin of a fire and product warning labels for electrical equipment. *Id.* at *11-*12. The witnesses regarding the cause and origin of the fire conducted a site inspection, reviewed photographs, analyzed artifacts from the fire, and conducted experiments with

4

exemplar products. *Id.* at *11. The Court noted that this testimony would assist the trier of fact and the opposing party could challenge these opinions on the origin and cause of the fire, and any limitations arising from assumptions upon which the witnesses had formed their opinions as "proper subjects for cross-examinations." *Id.* (citing *Alaska Rent-A-Car Inv. v. Avis Budget Grp, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).

With respect to the witness who would testify regarding product warning labels, the district court noted that the witness had prior work experience in this field. *Id.* at *11. The district court deemed this experience a sufficient basis for the witness to offer an opinion under Federal Rule of Evidence 702, which allows a witness to present opinion testimony if the witness meets the "liberal minimum qualifications." *Id.* (quoting *Kannankeril v.Terminix Intl., Inc.*, 128 F.3d 802, 809 (3d Cir. 1997)). Westfeeds's critique of Schlesser's qualifications go to "the weight accorded to [his] testimony, not to the admissibility of [his] opinion." *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993). Westfeeds remains free to impeach Schlesser on cross-examination to assist the jury in determining what weight to afford to Schlesser's testimony. The Court denies this motion.

### C. Opinions of Lance Hughes.

Westfeeds next seeks to exclude opinion testimony from Lance Hughes that Rumensin 90 only should be used under the direction of a nutritionist and that Rumensin toxicity caused the deaths of the Wertheimers' cattle. (Doc. 34 at 11-13.) Westfeeds first argues that Hughes lacks qualifications in legal requirements for retails sales of feed additives. *Id.* Westfeeds next contends that Hughes's opinions regarding the cause of death of the calves lack reliability because his own lab reports indicate that 5 out of 6 tissue samples did not confirm death by Rumensin toxicity. *Id.* Westfeeds also notes that Hughes relied on necropsies and that the Wertheimers' failure to preserve the bodies prevented it from conducting similar tests. *Id.*

The Wertheimers argue that Hughes will testify, based upon his education, training, and experience as a veterinarian, that Rumensin 90 should be used under the direction of a nutritionist. (Doc. 42 at 11-12.) Hughes will not offer opinions as to whether the Food and Drug Administration should not have approved Rumensin 90 for over-the-counter sales. *Id.* He instead will testify as to his understanding as to the appropriate use of Rumensin 90. Westfeeds remains free to cross-examine Hughes regarding the basis for his opinion and his knowledge, if any, of the legal requirements regarding the sale of Rumensin 90. *Star Ins. Co.*, at *11. The

availability of this potential impeachment testimony protects Westfeeds from the possibility that Hughes's testimony could confuse or mislead the jury.

With regard to the cause of the calves' death, the Wertheimers argue that Hughes visited their ranch every day during the outbreak and performed field exams. (Doc. 42 at 13.) Hughes performed more than 30 necropsies. *Id.* And Hughes stated unequivocally in his report that all deaths between January 7, 2018, and February 7, 2018, could be attributed to "the toxic exposure of monensin." *Id.* These issues, and the question of whether the lab results support Hughes's opinion again can be explored fully on cross-examination as the jury decides what weight, if any, to give to Hughes's testimony. This motion is denied.

**D. Westfeeds's Duty to Issue a Verbal Warning.**

Westfeeds seeks to exclude any testimony that it had a duty to issue a verbal warning to any prospective purchaser of Rumenin 90. Westfeeds notes that the law requires an "adequate" warning and not specifically a verbal warning. Westfeeds argues that Rumensin 90 typically contains multiple warnings on the bag label and that the law requires no warning above and beyond the warnings on the label. (Doc. 34 at 13.) The parties dispute whether the bag in this case contained any label. The jury must decide based on the evidence presented whether the bag contained any label with a warning, and, if so, whether that warning was adequate

7

under the circumstances. The Wertheimers correctly point out that the factfinder, rather than the Court, should resolve the question of whether any warning provided by Westfoods proved adequate under the circumstances. *Emery v. Federated Foods, Inc.*, 863 P.2d 426, 431-433 (Mont. 1993). The motion is denied.

### E. Admissibility of Emotional Distress Damages.

Westfeeds seeks to preclude the Wertheimers from presenting evidence of emotional distress to the jury on the basis that none of the family members bought the Rumensin and none of them own the cattle that died. (Doc. 34 at 15.) The Court previously rejected a claim for summary judgment brought by Westfeeds on this identical claim. (Doc. 54.) The Court applies that same reasoning here with regard to claims for emotional distress damages arising from the Wertheimers' negligence claims. This motion is denied.

### F. Prohibition of Golden Rule or Reptile Theory Arguments.

Westfeeds seeks a ruling to prohibit Wertheimers from eliciting any testimony or making any arguments that would suggest to the jury to put itself "in the shoes of" the Wertheimers. (Doc. 34 at 17.) Wertheimers assert that they have no intention of violating the prohibition on "golden-rule arguments." (Doc. 42 at 19.) The Court grants this motion.

**ORDER**

Accordingly**, IT IS ORDERED** that Westfeeds's motions in limine are **GRANT**, in part, and **DENIED**, in part, as follows:

1. Unlabeled Rumensin 90 Bags: **DENIED**;

2. Opinions of Jerry Schlesser: **DENIED**;

3. Opinions of Lance Hughes: **DENIED**;

4. Westfeeds's Duty to Issue a Verbal Warning: **DENIED**;

5. Admissibility of Emotional Distress Damages: **DENIED**; and

6. Prohibition of Golden Rule or Reptile Theory Arguments: **GRANTED**.

DATED this 28th day of February, 2019.

_____
Brian Morris
United States District Court Judge